IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

KENNETH JOHNSON,
     Petitioner,

v.                                 No.  4:06cv387/MP/MD

JAMES R. MCDONOUGH,
     Respondent.

_____

REPORT AND RECOMMENDATION

Before the court is an amended petition for writ of habeas corpus with memorandum in support filed pursuant to 28 U.S.C. § 2254 (doc. 7).  Respondent has filed a response (doc. 10) to which petitioner has replied (doc. 11).  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After careful consideration of all issues raised by petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that petitioner is not entitled to relief, and that the petition is without merit and should be denied.

## BACKGROUND AND PROCEDURAL HISTORY[1]

On the afternoon of March 9, 2002 the petitioner and some friends gathered at the Pine Ridge Trailer Park in Tallahassee.  They spent the afternoon and evening using MDMA (Ecstasy) and smoking marijuana laced with cocaine.  Around midnight they went to Muzze's Club, where they stayed until the club closed at about 4:00 a.m.  While there petitioner and a friend, the decedent Joe Howard, were arguing.  The men drove back to the trailer park while petitioner and Howard continued to argue.  When the car stopped petitioner, who was sitting in the front passenger seat, exited.  Howard, who had been sitting behind him, got out and was immediately punched by petitioner.  The two men fought, grappled, and Howard was able to grab petitioner's long dreadlocks with one hand and punch him with the other.  Petitioner then pulled a .38 caliber revolver from his pants pocket and shot Howard in the side at very close range.  Petitioner and the others left.  Someone called the police.  Howard was taken to the hospital but died of the single gunshot wound.

Petitioner was charged with first degree murder in the Circuit Court of Leon County, Florida.  A jury found him guilty and he was sentenced to life in prison.  His direct appeal was unsuccessful.  He filed a motion for post-conviction relief pursuant to Fla.R.Crim.P. 3.850, which was denied.  The Rule 3.850 court denied most of the petitioner's claims summarily (doc. 10, ex. O, pp. 102-112),[2] and after an evidentiary hearing denied the remainder (ex. O, pp. 304-317).  Petitioner appealed the denial of his 3.850 motion, and the appellate court affirmed.  Petitioner now seeks federal habeas corpus relief, and presents five grounds for relief, all alleging

---

[1]  The facts stated herein are those presented at trial and viewed in the light most favorable to the prosecution.  Due process requires a state to prove each element of the offense beyond a reasonable doubt.  *Jackson v. Virginia*, 443 U.S. 307, 316, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).  Where there are conflicting inferences and disputes exist, this Court must presume that the jury resolved such conflicts in favor of the prosecution, and must defer to that resolution.  *Martin v. State of Alabama*, 730 F.2d 721,724 (11th Cir. 1984).  Although this court is not called on to address directly the sufficiency of the evidence, the evidence presented to the jury plays a major part in the court's analysis.

[2]  Hereafter all references to exhibits will be to doc. 10 unless otherwise noted.

ineffective assistance of counsel.  Respondent concedes that the instant petition is timely, and that all grounds raised here were properly exhausted by being fairly presented to the state court (doc. 10, p. 2).

## STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States.  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218-19.  In relevant part, section 2254(d) now provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).  The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.  Under § 2254(d)(1), the writ may issue only if one of the following two

conditions is satisfied - the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

120 S.Ct. at 1523 (O'Connor, J., concurring).  Under the test just described a habeas court does not examine the State court's ruling to see if it is correct, but examines it only to see if it is reasonable.  More recently, in *Lockyer v. Andrade*, 538 U.S. 63, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003), the Supreme Court instructed that, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  *Id.*, 123 S.Ct. 1172.   The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case."  *Neelley v. Nagle*, 138 F.3d 917, 923 (11th Cir. 1998).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'"  *Lockyer,* 123 S.Ct. at 1173 (quoting *Williams v. Taylor*, 529 U.S. at 405-06, 120 S.Ct. at 1519-

20).  The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases--indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."  *Early v. Packer*, 537 U.S. 3, 8, 123 S.Ct. 362, 365, 154 L.Ed.2d 263 (2002) (quoting *Williams*, 529 U.S. at 405-06).  If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." *Williams,* 529 U.S. at 409, 120 S.Ct. at 1521.  Whether a State court's decision was an unreasonable application of legal principle must be assessed in light of the record the court had before it.  *Holland v. Jackson*, 542 U.S. 649, 652, 124 S.Ct. 2736, 2737-38, 159 L.Ed.2d 683 (2004) (per curiam); *cf. Bell v. Cone*, 535 U.S. 685, 697, n. 4, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).  An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context."  *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001); *see also Carr v. Schofield*, 364 F.3d 1246, 1250 (11th Cir. 2004) (A state court decision involves an unreasonable application of clearly established Federal law if the State court decision "identifies the correct governing Supreme

Court legal principle . . . but . . . 'refuses to extend the governing principle to a context in which the principle should have controlled.'" (quoting *Ramdass v. Angelone*, 530 U.S. 156, 166, 120 S.Ct. 2113, 2120, 147 L.Ed.2d 125 (2000))).

Section 2254(d)(1) requires more than mere error, and more even than clear error on the part of the State court before federal habeas relief may be issued. *E.g., Mitchell v. Esparza*, 540 U.S. 12, 124 S.Ct. 7, 12, 157 L.Ed.2d 263 (2003) ("We may not grant respondent's habeas petition, however, if the state court simply erred. . . ."); *Lockyer, supra*, 538 U.S. at 75, 123 S.Ct. at 1175 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); *Early v. Packer*, 537 U.S. at 11, 123 S.Ct. at 366 (State court "decisions which are not 'contrary to' clearly established Supreme Court law can be subjected to habeas relief only if they are not merely erroneous, but 'an unreasonable application' of clearly established federal law. . . ."); *Williams, supra*, 529 U.S. at 410-12, 120 S.Ct. at 1522-23 (The State court's incorrect or erroneous application of clearly established law will be held to be reasonable and not warrant a writ so long as the State court adjudication results in a "satisfactory conclusion.").

Only if the federal habeas court finds the State court decision to be contrary to, or an unreasonable application of, clearly established Supreme Court law does it take the final step of conducting an independent review of the merits of the petitioner's claims. *Neelley*, 138 F.3d 917. Even so, the writ still will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual

determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El v. Cockrell*, 537 U.S. 322, 123 S.Ct. 1029, 1041, 154 L.Ed.2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *see also Crawford v. Head*, 311 F.3d 1288 (11th Cir. 2002) (explaining that the new statute provides for a "highly deferential standard of review" for factual determinations made by a state court); *Jackson*, 112 F.3d at 824-25 (noting that the new statute places a heavier burden on petitioner to overcome the presumption of factual correctness).

## PETITIONER'S GROUNDS FOR RELIEF

All five grounds for relief presented here are based on petitioner's contention that he was denied his constitutionally guaranteed right to the effective assistance of counsel.  In order to prevail upon a claim of ineffective assistance of counsel, the petitioner must prove that:  (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

"The purpose of ineffectiveness review is not to grade counsel's performance."  *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (citing *Strickland*).  In evaluating counsel's performance, reviewing courts must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable,

professional assistance.  *Chandler* at 1314.  "Therefore, the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between."  *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir.), *cert. denied*, 513 U.S. 899, 115 S.Ct. 255, 130 L.Ed.2d 175 (1994).  In evaluating the reasonableness of counsel's actions, a court must make "every effort . . . to eliminate the distorting effects of hindsight" and must evaluate the reasonableness of counsel's performance "from counsel's perspective at the time."  *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065.  As the Eleventh Circuit has emphasized:

> We must avoid second-guessing counsel's performance: "[I]t does not follow that any counsel who takes an approach we would not have chosen is guilty of rendering ineffective assistance."  *Waters* [*v. Thomas*, 46 F.3d 1506], 1522 (en banc).  Nor does the fact that a particular defense ultimately proved to be unsuccessful demonstrate ineffectiveness.

*Chandler* at 1314 (footnote omitted).  Moreover, an ambiguous or silent record is not sufficient to disprove the strong and continuing presumption of effective representation.  Where the record is incomplete or unclear about counsel's actions, it will be presumed that he did what he should have done, and that he exercised reasonable professional judgment.  *Chandler* at 1314 n.15.

In order to meet the prejudice prong of the *Strickland* standard, petitioner must allege more than simply that the unreasonable conduct might have had "some conceivable effect on the outcome of the proceeding."  466 U.S. at 693, 104 S.Ct. at 2067.  Instead, the petitioner must show a reasonable probability exists that, "but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.*, at 694, 104 S.Ct. at 2068.  Without support in the record, bare allegations that the petitioner was prejudiced by counsel's performance are not sufficient.  *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir.), *cert. denied*, 484 U.S. 863, 108 S.Ct. 181, 98 L.Ed.2d 133 (1987).  In applying *Strickland* the court may dispose of an ineffective assistance claim if petitioner fails to carry his burden on

either of the two prongs.  *Strickland*, 466 U.S. at 697, 104 S.Ct. at 2069.

Finally, when a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact.  *Strickland*, 466 U.S. at 698, 104 S.Ct. at 2070; *Collier v. Turpin*, 177 F.3d 1184, 1197 (11th Cir. 1999).

1.    Failure to present evidence proving self-defense.

Petitioner first contends that his counsel was deficient because he (A) failed to show that the victim, Howard, had a reputation for violence, (B) failed to present forensic evidence, and (C) failed to call available witnesses.  This claim with its subsets was presented to the Rule 3.850 court.

A.    Reputation for violence.

Petitioner contends that Howard was a violent man, and that if counsel had presented evidence proving it, the jury would have accepted his self-defense claim.  The Rule 3.850 court rejected this claim summarily.  It held that at trial the court ruled that prior acts of violence known to the defendant were admissible.  The court further held that the witnesses who would have supported this claim, Mr. Burns and Mr. Rollins (who were in the group the night of the murder) were present to testify, but that petitioner "wanted the case to be over and instructed his counsel not to call the two witnesses he is now complaining of." (Ex. O, p. 105).  This issue was also addressed at the evidentiary hearing, and based on counsel's testimony the court held that counsel was aware of the proposed witnesses, had them available to testify, but made a conscious strategic decision not to call them with the petitioner's agreement.

The Rule 3.850 court's ruling is well supported in the record.  Petitioner was allowed to testify that a few days before the murder the victim had slapped and punched an elderly woman, thus showing him to be a violent person (ex. E, p. 540,

541).  When Mr. Rollins took the witness stand during the defense's case and was preparing to testify about an incident in which the victim had acted violently, petitioner instructed his counsel not to examine Rollins and to rest the defense case (ex. E, p. 635-637).  In fact, Rollins and Burns had already testified for the state, and their testimony was very damaging to the petitioner's self-defense case (ex. B, pp. 59-172; exh. C, pp. 191-218, 312-342). Counsel testified at the Rule 3.850 hearing that Rollins and Burns testified during the state's case, and that some of their testimony was helpful to the defense (although much was not), that he did not want to risk putting them on again and give the state the opportunity to bring out more unfavorable testimony.  Moreover, as the record shows, petitioner made the ultimate decision not to call them, (ex. N, pp. 339-340).

The Rule 3.850 court held that the decision not to call the two witnesses was a strategic one.  "Inquiries into strategic or tactical decisions challenged as ineffective assistance of counsel involve both a factual and a legal component.  The question of whether an attorney's actions were actually the product of a tactical or strategic decision is an issue of fact, and a state court's decision concerning that issue is presumptively correct.  By contrast, the question of whether the strategic or tactical decision is reasonable enough to fall within the wide range of professional competence is an issue of law not one of fact . . . ."  *Provenzano v. Singletary*, 148 F.3d 1327, 1330 (11th Cir. 1998); *Jackson v. Herring*, 42 F.3d 1350, 1357 (11th Cir. 1995).  Moreover, counsel's tactical decisions on which defense to pursue are "virtually unchallengeable."  *Provenzano*, 148 F.3d at 1332 (quoting *Strickland*)*; Waters v. Thomas,* 46 F.3d 1506, 1522 (11th Cir. 1995)); *cf Miller v. Anderson*, 255 F.3d 455, 458 (7th Cir. 2001) (the fact that something was a tactical decision does not immunize it from review under *Strickland*).  "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the

presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065 (quotation marks and citation omitted); *see also Waters v. Thomas*, 46 F.3d 1506, 1518-19 (11th Cir. 1995) (en banc) (observing that "[w]e cannot, and will not, second guess" the "strategic decisions trial counsel are called upon to make"). "[C]ounsel cannot be adjudged incompetent for performing in a particular way in a case, as long as the approach taken might be considered sound trial strategy." *Johnson v. Alabama,* 256 F.3d 1156, 1176 (11th Cir. 2001).

"There are countless ways to provide effective assistance in any given case," and "[e]ven the best criminal defense attorneys would not defend a particular client in the same way." *Strickland v. Washington*, 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984); accord, e.g., *Waters v. Thomas*, 46 F.3d 1506, 1522 (11th Cir. 1995) (en banc) ("Three different defense attorneys might have defended Waters three different ways, and all of them might have defended him differently from the way the members of this Court would have, but it does not follow that any counsel who takes an approach we would not have chosen is guilty of rendering ineffective assistance."). Indeed, "a lawyer can make a reasonable decision that no matter what an investigation might produce, he wants to steer clear of a certain course." *Rogers v. Zant*, 13 F.3d 384, 387 (11th Cir. 1994). Accordingly, counsel's decision to curtail investigative efforts is also presumed reasonable, and the exclusion of other viable defenses does not establish ineffective assistance unless it is demonstrated that the course counsel actually chose was itself unreasonable. *Chandler*, 218 F.3d at 1318.

Likewise, counsel's decision whether to call a particular witness is also a matter of trial strategy entitled to great deference. *Chandler*, 218 F.3d at 1314 n. 14 (citing *Waters v. Thomas*, 46 F.3d 1506, 1512, 1518-19 (11th Cir. 1995) (en banc)). "The mere fact that other witnesses might have been available or that other testimony might have been elicited from those who testified is not a sufficient

ground to prove ineffectiveness of counsel."  *Waters*, 46 F.3d at 1514.  "Complaints
of uncalled witnesses are not favored, because the presentation of testimonial
evidence is a matter of trial strategy and because allegations of what a witness
would have testified are largely speculative."  *Buckelew v. United States*, 575 F.2d
515, 521 (5th Cir. 1978).  Here counsel did not think Burns and Rollins would help the
defense, and petitioner agreed at the time.  His current self-serving argument to the
contrary is devoid of merit.

Petitioner also posits that FDLE records showed that the victim had aliases
and arrests, and that these records should have been introduced, but he does not
show that such information would have been admissible.  To the contrary, the Rule
3.850 court held that if offered, the evidence would not have been admitted (ex. O,
p. 106).  Petitioner's argument that the state court unreasonably applied *Strickland*
obviously depends upon this court determining counsel's performance was
deficient, but first this court would have to conclude that the state court
misinterpreted state law.  In *Herring v. Secretary, Dep't of Corrections*, 397 F.3d 1338
(11th Cir. 2005) and *Callahan v. Campbell*, 427 F.3d 897 (11th Cir. 2005), the Eleventh
Circuit addressed similar issues.  In *Herring*, the petitioner argued his counsel was
ineffective for failing to make an objection, based on state law, to the introduction
of non-statutory aggravating evidence at the penalty phase of his trial.  *Id.* at 1354-55.
The Florida Supreme Court concluded that the proposed objection would have been
overruled and therefore counsel was not deficient.  *Id.*  The Eleventh Circuit held:
"The Florida Supreme Court already has told us how the issues would have been
resolved under Florida state law had [petitioner's counsel] done what [petitioner]
argues he should have done. . . .  It is a 'fundamental principle that state courts are
the final arbiters of state law, and federal habeas courts should not second-guess

*Case No: 4:06cv387/MP/MD*

them on such matters.'" *Id.* (quoting *Agan v. Vaughn*, 119 F.3d 1538, 1549 (11th Cir. 1997)).

Similarly, in *Callahan*, the petitioner contended his counsel was ineffective for failing to argue that, based on the Alabama state courts' interpretation of the Double Jeopardy Clause in three state court cases (*Hull v. State*, 607 So.2d 369 (Ala. Crim. App. 1992), *Ex parte Hergott*, 588 So.2d 911 (Ala. 1991), and *Ex parte Callahan*, 471 So.2d 463 (Ala. 1985) (*Callahan I*)), the introduction of petitioner's statements at his second trial was precluded.  The Alabama Court of Criminal Appeals concluded that the petitioner's claim relied on an erroneous interpretation of state law and rejected it.  The Eleventh Circuit held:

> [T]he Alabama Court of Criminal Appeals has already answered the question of what would have happened had [petitioner's counsel] objected to the introduction of [petitioner's] statements based on *Callahan I*, *Hull*, and *Hergott* -- the objection would have been overruled. *Callahan* [*v. State*], 767 So.2d [380,] 386-87 [(Ala. Crim. App. 1999)] (*Callahan III*). Therefore, [petitioner's counsel] was not ineffective for failing to make that objection.
>
> Moreover, we are convinced [petitioner] could not satisfy the prejudice prong of *Strickland*. [Petitioner's] ability to demonstrate prejudice is again foreclosed by the state court's decision in *Callahan III*.  Even if [petitioner's counsel] was ineffective for failing to make the objection, the state court has told us that if he did make the objection it would not have been successful. [Petitioner] cannot be prejudiced by his counsel's failure to make a losing objection.

427 F.3d at 932.

Here, as in *Herring* and *Callahan*, the state court has answered the question of what would have happened had petitioner's counsel had offered Howard's criminal record in evidence - it would not have been admitted.   Therefore, counsel cannot be faulted for having failed to made it.  And since counsel would have failed had he acted as petitioner demands, petitioner cannot show prejudice.

**B.        Forensic evidence.**

Next petitioner says that counsel should have hired an expert, who could have testified that Howard had powder residue on his hands, thus proving that there was a struggle for the gun.  The Rule 3.850 court rejected this argument, holding that there had never been any proof that a powder residue test had even been done, and that even if there was such evidence, it would have added nothing to the defense because there was ample evidence that there was a struggle for the gun before it went off (ex. O, p. 106-107).  In his motion for post-conviction relief petitioner himself stated that several witnesses testified, as did petitioner, that there was a struggle for the gun (ex. O, pp. 15-16).  Petitioner says that proof of a struggle would have resulted in an acquittal.  This entirely ignores the fact that, as admitted by petitioner's own testimony, he was the one who had the gun in his possession before the fight started (ex. E, p. 563).

**C.        Expert witness on toxicology.**

Petitioner also contends that an expert witness could have testified that Howard had drugs in his system, and that this would have made him violent.  The Rule 3.850 court rejected this claim summarily, noting that such testimony would have hurt, not helped, because it was undisputed that petitioner also had drugs in his system, which he admitted (ex. O., p. 107).  This finding is supported by the trial record (ex. E, pp. 533-538).

 Petitioner has not shown deficient performance on the part of his attorney on any of the subsets of argument concerning failure to present a proper defense.  The state court's ruling did not result "in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," 28 U.S.C. § 2254(d) (1); *Williams, supra*.  Petitioner is not entitled to federal habeas relief, and the writ should not issue.

### 2.  <u>Failure to move for mistrial.</u>

_____**For his second ground for relief petitioner contends that his attorney should have moved for a mistrial when the state presented evidence that petitioner had previously been incarcerated.  At trial the state played a tape recording of an interview with Mr. Rollins in which he mentioned petitioner having been "locked up" before (ex. C, p. 210).  Later, Patrice Jones testified that she visited petitioner at the jail after he was arrested on the instant charge, and petitioner told her that he was going to "sit it out," that he had done it before, and that they couldn't prove anything (ex. E, pp. 568-569).  At the evidentiary hearing counsel testified that part of the defense strategy was to show the jury that petitioner wanted the jury to hear his story, because the police sometimes make mistakes.  Petitioner had told counsel that he had previously sat in jail for two years rather than plead guilty to a crime he did not commit, and that he had finally been released after the state let him plead to a misdemeanor (ex. N, pp. 25-27).  Petitioner so testified at trial (ex. E, p. 569).**

**The Rule 3.850 court held that counsel had made a reasonable, informed strategic decision not to object.  That is a fact finding to which this court owes deference. Moreover, under the circumstances it was not an unreasonable strategy. There was no question that petitioner shot the victim.  The defense was that the shooting was in self defense, and one way to show the jury that the police make mistakes was to show how they had made a mistake in an earlier case.  The question for this court is not whether that was the best strategy, nor even whether it was a good one.  The question is whether petitioner has shown that *no other lawyer* would have done what counsel here did.  Petitioner has not carried that burden.  The state court's ruling did not result "in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," 28 U.S.C. § 2254(d) (1); *Williams, supra*.  Petitioner is not entitled to federal habeas relief, and the writ should not issue**

### 3.   Failure to object to a juror listening to the radio.

Next petitioner says that a juror named Bell constantly listened to a radio during the trial, and counsel never objected.  Petitioner raised this ground in his motion for post-conviction relief, and the court denied relief summarily.  It pointed to the portions of the trial transcript cited by petitioner, and noted that the transcript showed only that juror Bell was listening to a radio during times the court was in recess or while the jury was seating itself after a recess (ex. O, p. 107).  The trial transcript supports this finding (ex. B, p. 348; ex. G, p. 801).  The Rule 3.850 court further found that, even if the juror were listening to a radio during the trial, which had not been proven, petitioner did not show prejudice, because before deliberations began juror Bell was excused because she was an alternate (ex. O, p. 107).

Petitioner does not claim that juror Bell, or any other juror, was exposed to anything outside the record concerning the trial.  In fact, the only mention juror Bell made of what she was hearing concerned the day's stock market performance (ex. B, p. 348).  The trial court held that this juror listening to a radio during recesses was not shown to have affected the outcome of the trial.  This court agrees.  Therefore, the state court's ruling did not result "in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," 28 U.S.C. § 2254(d)(1); *Williams, supra*.  Petitioner is not entitled to federal habeas relief, and the writ should not issue.

### 4.   Failing to object to state being allowed to reopen its case.

Petitioner contends that the state was allowed to reopen its case twice, and that counsel did not object.  The Rule 3.850 court rejected this claim summarily, and rightfully so, because the claim is factually incorrect as the record shows.  The first time the state "reopened" is case, was when it presented a rebuttal witness after the defense rested.   Contrary to petitioner's uninformed argument, this was not

unorthodox.  The state was entitled to present rebuttal evidence, just as it can in any case in which the defense presents evidence.  The second time (actually the only time) the state reopened its case was only after counsel objected strenuously, but was overruled by the court (ex. F, pp. 667-669).  There being no factual basis for this claim, it is totally without merit.  The state court's ruling did not result "in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," 28 U.S.C. § 2254(d) (1); *Williams, supra*.  Petitioner is not entitled to federal habeas relief, and the writ should not issue.

> 5.   <u>Failure to object to prosecutor's final argument.</u>

Finally, petitioner contends that counsel was ineffective when he failed to object to the prosecutor argued to the jury that the victim was "probably sober" (ex. F, p. 707), and by calling the petitioner a liar (ex. F, p. 753).  The Rule 3.850 court held that there was no meritorious basis for objecting to these arguments, so counsel was not ineffective.

It is long established Supreme Court law that prosecutors must refrain from improper methods calculated to produce a wrongful conviction; they may strike hard blows but are not at liberty to strike foul ones.  *Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 74 L.Ed.2d 1314 (1935). "A lawyer shall not ... state a personal opinion as to ... the credibility of a witness ... or the guilt or innocence of an accused" and shall not "use arguments calculated to inflame the passions or prejudices of the jury."  *Darden v. Wainwright*, 477 U.S. 168, 181, 106 S.Ct. 2464, 2471, 91 L.Ed.2d 144 (1986) (citing Model Rules of Professional Conduct, Rule 3.4(e) (1984);  Code of Professional Responsibility, DR 7-106(C)(4) (1980);  ABA Standards for Criminal Justice:  3-5.8(b) (2nd Ed. 1980)).

In applying the various professional standards to the conduct of attorneys who appear before them, courts must not lose sight of the reality that "[a] criminal trial does not unfold like a play with actors following a script."  *United States v.*

*Young*, 470 U.S. 1, 10, 105 S.Ct. 1038, 1043, 84 L.Ed.2d 1 (1985) (quoting *Geders v. United States*, 425 U.S. 80, 86, 96 S.Ct. 1330, 1334, 47 L.Ed.2d 592 (1976)).  "[I]n the heat of argument, counsel do occasionally make remarks that are not justified by the testimony, and which are, or may be, prejudicial to the accused."  *Id.* (*citing Dunlop v. United States*, 165 U.S. 486, 498, 17 S.Ct. 375, 379, 41 L.Ed. 799 (1897)).

Challenges to allegedly improper prosecutorial comments are not infrequent. However, in evaluating a prosecutorial indiscretion:

> it is not enough that the prosecutors' remarks were undesirable or even universally condemned. The relevant question is whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process.

*Darden, supra* (internal citations omitted); *Donnelly v. DeChristoforo*, 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974); *United States v. Young*, 470 U.S. 1, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985).  Inappropriate prosecutorial comments, standing alone, do not justify a reviewing court to reverse a criminal conviction obtained in an otherwise fair proceeding.   Instead, the remarks must be examined within the context of the trial.  *Young,*  470 U.S. at 11, 105 S.Ct. at 1044.

Review of allegedly improper vouching to which proper objection was made is plenary, because the issue presents a mixed question of law and fact.  *United States v. Eyster*, 948 F.2d 1196, 1206 (11th Cir. 1991).  Reversal is not required unless the defendant proves that (1) the remarks were improper, and (2) the remarks prejudicially affected the substantial rights of the defendant.  *Id.*  In determining whether a prosecutor's improper comments were so egregious as to render the proceeding fundamentally unfair, the court will consider the remedying effects, if any, of the trial court's instructions to the jury and the evidence of guilt.  *Cargill v. Turpin*, 120 F.3d 1366, 1379 (11th Cir. 1997).  Weight is also given to the trial judge's assessment of any prejudicial effect the comments may have had.  *United States v.*

*Simon*, 964 F.2d 1082 (11ᵗʰ Cir. 1992).  Finally, "improper argument rises to the level of a denial of due process when there is a reasonable probability that, but for the prosecutor's offending remarks, the outcome of the proceeding would have been different."  *Kennedy v. Dugger*, 933 F.2d 905 (11ᵗʰ Cir. 1991), quoting *Williams v. Kemp*, 846 F.2d 1276 (11ᵗʰ Cir. 1988) (internal quotations omitted).

Nothing the prosecutor said, if improper, which this court does not find, was so offensive as to have affected the outcome of the case.  First, the state argued that the victim was probably sober, even though the medical examiner had testified that he had cocaine in his system.  The was a fair comment on the evidence under the circumstances, and it was for the jury to accept it or not accept it.  As to the state's comments on petitioner's veracity, what the prosecutor said was true: petitioner lied to the police in his original statement when he denied that he was present, and then testified at trial that the gun went off when the victim grabbed it.  Petitioner even told the jury that he lied to the police (ex. E, p. 570).  Therefore, the state court's ruling did not result "in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," 28 U.S.C. § 2254(d) (1); *Williams, supra*.  Petitioner is not entitled to federal habeas relief, and the writ should not issue.

Petitioner here has failed to show that his counsel's performance was deficient, as defined by the Supreme Court in *Strickland*, or that if counsel was deficient, which this court does not find, that petitioner was in any way prejudiced.  The jury heard the evidence in a fair trial and petitioner was convicted, not because his attorney failed him, but because he was guilty.  Accordingly, it is respectfully RECOMMENDED that the Title 28 U.S.C. § 2254 amended petition for writ of habeas corpus (doc. 7), challenging the conviction and sentence in *State of Florida v. Kenneth Johnson* in the Circuit Court of Leon County, Florida, case no. 2002-CF-

849A, be DENIED, that this cause be DISMISSED, and that the clerk be directed to close the file.

At Pensacola, Florida, this 18th day of October, 2007.


/s/ *Miles Davis*
       **MILES DAVIS**
       **UNITED STATES MAGISTRATE JUDGE**


**NOTICE TO PARTIES**

Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  See 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).